**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| KEM EDWARDS D/B/A INTERSKIL, | § § § | |
| Plaintiff, | § § | |
| V. | § § | CAUSE NO. A-07-CA-1008 RP |
| TERRIE WYATT, INDIVIDUALLY AND D/B/A ATWDESIGN, | § § § § | |
| Defendant/Counter-Plaintiff, | § § § | |
| V. | § § | |
| JEFF EDWARDS, INDIVIDUALLY AND D/B/A BODYCUE, BODYQ, JUDGE THE WAITER, JUDGE THE SERVICE AND BIZOPS; KEM EDWARDS, INDIVIDUALLY AND D/B/A INTERSKIL, | § § § § § § | |
| Counter-Defendants. | § | |

## ORDER

Before the Court are Defendant/Counter-Plaintiff's Renewed Motion for Judgment as a Matter of Law, filed June 2, 2009 (Clerk's Dkt. #110); Plaintiff/Counter-Defendant's Response to Defendant/Counter-Plaintiff's Renewed Motion for Judgment as a Matter of Law, filed June 15, 2009 (Clerk's Dkt. #112); Defendant/Counter-Plaintiff's Reply in Support of Her Renewed Motion for Judgment as a Matter of Law, filed June 26, 2009 (Clerk's Dkt. #114.); and Plaintiff/Counter-Defendant's Motion to Strike Defendant/Counter-Plaintiff's Reply, filed July 1, 2009 (Clerk's Dkt. #115). The parties consented to this Court's jurisdiction and the case was reassigned to this Court on November 5, 2008.[1] Having reviewed the filings by each party, as well as the relevant case law and the entire case file, the motion is now ripe for determination.

### I. BACKGROUND

On May 18, 2009, this action came before the Court for a trial by jury on several claims,

---
[1] (Clerk's Dkt. #58.)

including a claim by Plaintiff Kem Edwards d/b/a Interskil ("Plaintiff") alleging several instances of defamation by Defendant/Counter-Plaintiff Terrie Wyatt ("Wyatt"). At the close of Plaintiff's case in chief, Defendant moved for judgment as a matter of law on Plaintiff's claims of defamation. At the request of the parties, the Court reserved judgment on that motion until after the testimony of Wyatt.

On May 21, 2009, upon completion of its deliberations, the jury rendered its verdict in favor Plaintiff on a single instance of defamation involving a Craigslist posting forwarded to Jan Hargrave on or about September 5, 2007.[2] As damages for this defamation, the jury awarded Plaintiff $1,000.00 for loss of income sustained in the past and $187,500.00 for loss of income that, in reasonable probability, would be sustained in the future.[3] The jury found no liability for any party on all additional claims. The Court did not rule of the motion for judgment as a matter of law prior to the verdict of the jury.

## II. CURRENT MOTIONS

Pursuant to Rule 50(b) of the Federal Rules of Civil Procedure, Wyatt renews her motion made during trial and seeks judgment as a matter of law on Plaintiff's claim of defamation.

Additionally, Plaintiff moves to strike a defense raised in Wyatt's reply to the motion for judgment as a matter of law.

## III. APPLICABLE LAW

If a party makes a motion for judgment as a matter of law during trial, but the court reserves ruling on that motion until after the verdict of the jury, the moving party may renew its motion no later than ten days after the entry of judgment. FED. R. CIV. P. 50(b). If a court finds that, considering all of the evidence proffered, "a reasonable jury would not have a legally sufficient evidentiary basis" to find in favor of a party on an issue or claim, the court may resolve the issue

---

[2] (Question Nine, Clerk's Dkt. #108.)

[3] (Question Ten, Clerk's Dkt. #108.)

2

against the party and grant a motion for judgment as a matter of law. FED. R. CIV. P. 50(a)(1).

To survive a motion for judgment as a matter of law, "the party opposing the motion must at least establish a conflict in substantial evidence on each essential element of their claim." *Anthony v. Chevron*, 284 F.3d 578, 583 (5th Cir. 2002). All evidence is considered in the light most favorable to the non-moving party. *Id.* The reviewing court may not make credibility determinations or weigh the evidence. *Poliner v. Tex. Health Sys.*, 537 F.3d 368, 376 (5th Cir. 2008). "Nonetheless, if the facts and inferences point so strongly and overwhelmingly in favor of the moving party that the reviewing court believes that reasonable jurors could not have arrived at a contrary verdict" then judgment as a matter of law is proper. *Id.* (quoting *Dixon v. Wal-Mart Stores, inc.*, 330 F.3d 311, 313-14 (5th Cir. 2003)).

A claim of defamation under Texas law requires evidence that the defendant: (1) published a statement of fact concerning the plaintiff; (2) that was defamatory; (3) the statement was false; (4) the defendant acted negligently in publishing the false and defamatory statement; and (5) the plaintiff suffered damages as a result. *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998); *El-Khoury v. Kheir*, 241 S.W.3d 82, 85 (Tex. App. –Houston [1st Dist.] 2007, XXXX); *Brown v. Swett & Crawford of Tex.*, 178 S.W.3d 373, 382 (Tex. App. –Houston [lst Dist.] 2005, XXXX). Therefore, to prevail on Wyatt's motion for judgment as a matter of law, Plaintiff must have established, at least, a conflict in substantial evidence regarding each element of this claim.

## IV. ANALYSIS

Plaintiff complained of four separate instances of defamation by Wyatt and individual questions were asked of the jury about each instance. First, Plaintiff alleged that Wyatt defamed Plaintiff by sending an email to Darin Hanks, a business associate of Plaintiff, on or about September 4, 2007.[4] The jury concluded that Edwards had not offered sufficient evidence to support this claim. Plaintiff also alleged that Wyatt defamed Plaintiff by posting statements on

---

[4] (Question One, Clerk's Dkt. #108.)

Craigslist.[5] Again, the jury concluded that Edwards had not sufficiently proven her claim. Plaintiff additionally alleged that Wyatt defamed Plaintiff by sending an email to Colleen Bitner.[6]

Finally, Plaintiff alleged that Wyatt defamed Plaintiff by forwarding a Craigslist posting to Jan Hargrave ("Hargrave") on or about September 5, 2007.[7] Here, the jury concluded that Wyatt had defamed Plaintiff. This is the sole claim at issue in this motion for judgment as a matter of law.

Before turning to the elements of the claim, however, the undersigned must address a preliminary matter that constitutes the bulk of Wyatt's motion for a judgment as a matter of law.

**A. Identification of the Defamatory Statements**

The primary contention in Wyatt's motion is that the particular defamatory statement or statements that was forwarded to Hargrave was not been identified. As a result, Wyatt argues, it the jury had no evidence of the statements' contents, timing or place of publication, no evidence of whether it was fact or opinion, no evidence that the statement referred to Plaintiff, was false or defamatory, whether Wyatt acted with negligence in publishing the statement, or whether the claim was made after the statute of limitations had expired. In short, Wyatt argues that Plaintiff cannot prove the elements of her claim because she did not identify for the jury the particular posting or postings that Wyatt forwarded to Hargrave.

To determine whether the jury had sufficient evidence to conclude that the postings Wyatt forwarded to Hargrave were the postings entered into evidence, a detailed review of the evidence presented to the jury is necessary.

On questioning from her attorney, Wyatt testified at trial that she sent some Craigslist postings to Hargrave.

Q: Very very quickly. There's an allegation that you forwarded Craig's List postings

---

[5] (Question Five, Clerk's Dkt. #108.)

[6] (Question Thirteen, Clerk's Dkt. #108.)

[7] (Question Nine, Clerk's Dkt. #108.)

4

to her. Did you forward Craig's List postings to Jan Hargrave?
A: Yes, I did, upon her request.
Q: So she asked you –
A: She said she already received some and wanted to know if I knew of any more, and if I did, please let her know.[8]

Wyatt was also asked about forwarding postings to Hargrave by Plaintiff's counsel. He asked about several requests for admission she had made during the discovery process, including one regarding the forwarding of Craigslist postings to Hargrave. During the questioning, she clarified that the postings forwarded referred to Plaintiff and Jeff Edwards.

Q: If you could look at 42 [referring to Request for Admission Number 42], please. Do you admit or deny forwarding ads of listings on Craig's List to Jan Hargrave via email that refer or relate to Interskil or Jeff Edwards?
A: Yes.[9]

Earlier in her testimony, Wyatt had clarified that answering "yes" meant she was admitting that statement.[10] Request for Admission 42, which was not admitted at trial was as follows:

42. Do you admit or deny forwarding ads or listings on Craigslist to Jan Hargrave via email that refer or relate to Interskil or Jeff Edwards?
Response:
Ms. Wyatt admits that after the instant suit was filed, in response to the request from Ms. Hargrave, she forwarded copies of ads or listings on Craigslist to her.[11]

At separate times during the trial, both Plaintiff and Wyatt entered specific Craigslist postings into evidence. There are four at issue. The Court has labeled them as Postings #1-4. Their substance is reprinted below.

Posting #1:

Those who have been scammed by Interskil, The BizOp Theatere, or BodyQs will prevail soon. We'd like to get more testimonials from others out there who have

---

[8] (Tr. at 36:17-24.) The undersigned notes that, in this motion challenging the sufficiency of the evidence proffered at trial, neither the moving nor responding party cited to an actual transcript of the trial. Instead, both parties merely assert what they think or remember the testimony was at trial. On its own accord, the undersigned has secured a copy of the relevant portions of the trail transcript.

[9] (Tr. at 44:23-45:2.)

[10] (Tr. at 43-44.)

[11] (Exhibit C, Counter-Defendants' Motion for Summary Judgment, Clerk's Dkt. #62.)

5

been wronged by these guys. They'll flag this posting soon, so hurry.

Interskil and other companies that make money off of others working for them should be shut down.

If your currently working for them, make sure you get your money at the end of the day. Don't take a post dated check. If your check bounces, that would actually be a good way to put these guys out of business. Bu you have to report this to the proper authorities.

Because these guys are scamming a small amount from a large number of people they are getting away with it because of that fact that's it [sic] a pain to worry about a few hundred dollars. It's not worth it for any one person to file a court action. The risk and time is not worth it. But if all of those people come together who have been wronged, a class A lawsuit can be filed against this company.

If Jeff tells you he is going to sue you, know that he is bluffing. No one can be sued for doing work and then asking to be paid. The judge will laugh at him. He will never file! He knows he is in the wrong and con men don't want the courts involved.

Good luck. Give us your story. We'll keep posting until he stops his shady practice. Jeff if you're listening again, send us an email and tell me your story. Since we haven't heard from you we must assume that these people are telling the truth about your and your shady business. We would love to hear your side. I'm sure a lot of these professionals would too.[12]

Posting #2:

This posting is for those looking to help find out more about a company called Interskil. We want your help! If you were scammed by Interskil, The BizOp Theatre, or BodyQ'd come help us out. This is not a paying gig but it will be very fulfilling.

We have contacted the Texas Workforce Commission for help as well. We are also hiring a collections lawyer soon to help collect fees owed to you filmmakers, actors, sales people, and who ever else feels this company owes them.

This is a job posting! Work as many hours as your want! This is a job for everyone harmed by this fraudulent company. There will be pay. But it may not be in monetary form. Some things are worth doing because they are just right!

To fill out an application with us just send us your story. Or if you just like helping out with these types of proceedings tell us how you can help.

Thanks Austin Artists! We started out as few and are now many![13]

Posting #3:

We are looking for individuals who would like to get paid for work they have already done for a company called Interskil. We already have a list of people that is growing each day. If you would like to help out, contact us. If you would like to try and get paid, contact us. If you like to do what is right and stop companies from scamming our community, contact us.

This is not a paid position, but we expect to make Interskil pay.

We are not making any money off of this. We are not lawyers. We are working with

---

[12] (Trial Exhibit P-11.)

[13] (Trial Exhibit P-12.)

a collections lawyer to make this happen. We want those who have been scammed to work with us.[14]

Posting #4:

To keep track of the postings we've made we decided to list all the postings again in the community thread. Please take a look and see what we've done thus far.
These guys are crooks.
Interskil should learn form [sic] there [sic] mistakes and pay the people who have slaved for them.
They will flag this so find the postings and send them to your film make friends.
Also if you see the person in the picture below beware. He either wants to cheat you or train you for money.
Thanks.
[A picture of Jeff Edwards is included in the posting.][15]

The jury was presented with evidence that Wyatt forwarded Craigslist postings to Hargrave that referred to Interksil, the name under which Plaintiff was doing business as, and Jeff Edwards. The jury was presented evidence that of Craigslist postings that were refer to Interskil and Jeff Edwards as "scammers" and "crooks." To reach its verdict, the jury must have inferred that the postings in evidence were those forwarded by Wyatt to Hargrave. The Court does not find this inference unreasonable. *Poliner*, 537 F.3d at 376 (the court is obligated to draw all reasonable inferences in favor of the non-moving party). The jury reviewed the evidence as a whole and drew a logical conclusion: the postings Wyatt admitted to forwarding were those admitted into evidence, a fact Wyatt never denied.

The Court acknowledges that allegedly defamatory statements have to be identified with particularity in order to permit a defendant to raise an adequate defense. *See, e.g.*, *Watkins v. TDCJ*, 269 Fed. Appx. 457, 465-65 (5th Cir. 2008) (plaintiff failed to proffer evidence of specific statements of defamation, summary judgment in favor of defendant appropriate); *Hadlock v. Tex. Christian Univ.*, No. 2-07-290-CV, 2009 Tex. App. LEXIS 1330 at *11-18 (Tex. App. –Fort Worth, Feb. 26, 2009, pet. filed) (when substance of allegedly defamatory statement is not identified, then

---

[14] (Trial Exhibit P-13.)

[15] (Trial Exhibit P-14.)

judgment in favor of defendant is proper); *Brown*, 178 S.W.3d at 383 (no question of fact for the jury when plaintiff did not provide evidence of the substance of information that was allegedly defamatory); *Strickland v. Aaron Rents*, No. EP-05-CA-13-DB, 2005 U.S. Dist. LEXIS 17948 at *7-8 (W.D. Tex. Aug. 22, 2005) (defamation claim failed because plaintiff did not specify statement's content, time and place of publication); *Jackson v. Dallas Independent School Dist.*, No. 3:98-CV-1079-D, 1998 U.S. Dist. LEXIS 10328 at *13-14 (N.D. Tex. July 2, 1998) (courts require particular pleading of defamation claims in order to allow opposing party raise appropriate defenses, failure to specify time and place results in dismissal of claim); 5A CHARLES ALAN WRIGHT AND ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1309 (3d ed. 2007) (defamation claims must be plead with particularity in order to allow opposing party the opportunity to adequately respond to claims). Additionally, the substance of defamatory statements cannot be proven through circumstantial evidence. *Elkins v. Capital One Bank*, No. 05-06-01539-CV, 2008 Tex. App. LEXIS 605 at *10-11 (Tex. App. –Dallas Jan. 29, 2008, pet. denied) (testimony generally that bank had reported false and negative information about him to credit bureaus was insufficient to support defamation claims because "without knowing the allegedly false statement or statements [the defendant] provided the credit agencies, we cannot conclude [the plaintiff] established his defamation claim as a matter of law").

Here, however, the substance of the statements were in evidence as was Wyatt's admission that she forwarded some postings that referred to Interskil to Hargrave. The jury, apparently, connected the various pieces of evidences into a cohesive whole in a way that resulted in liability for Wyatt. It was reasonable to infer that the statements in evidence were those that were forwarded to Hargrave by Wyatt. It is not proper for this Court to replace the reasonable inferences drawn by the jury with its own judgment.

The majority of Wyatt's motion for judgment as a matter of law is founded on her argument

8

that the particular defamatory statement was not identified.[16] The Court concludes that the jury was presented with the substance of the statements and, consequently, had sufficient evidence upon which to base its decision. Therefore, Wyatt's motion for judgment as a matter of law on this ground is denied.

## 2. Publication of the Forwarded Posting

Wyatt also argues that she did not publish the postings by merely forwarding postings created by other to Hargrave. She argues that, because she never "adopted" the statement as her own, she cannot be held liable. For this proposition, she cites no authority.

The jury was instructed that a "statement is published when it is communicated to a third person capable of understanding its defamatory import and in a manner that the third person understands."[17] This is in line with the definition of publish that is used by Texas courts. *See, e.g, Marshall Field Stores v. Gardiner*, 859 S.W.2d 391, 396 (Tex. App.–Houston [1st Dist.] 1993, writ dism'd w.o.j.) (citing RESTATEMENT (SECOND) OF TORTS § 577 (1977)). The Restatement states that a "publication of defamatory matter is its communication intentionally or by a negligent act to one other than the person defamed." Rsmnt. 2d of Torts § 577 (1977). This includes written or printed words which are "brought to the attention of a third person." *Id.* § 577 cmnt a. Additionally, "[e]xcept as to those who only deliver or transmit defamation published by a third person, one who repeats or otherwise republished defamatory matter is subject to liability as if he had originally published it." *Id.* § 578. *See also*, *First State Bank v. Ake*, 606 S.W.2d 696, 701 (Tex. App.–Corpus Christi 1980, writ ref'd); *cf. Stephan v. Baylor Med. Ctr.*, 20 S.W.3d 880, 890 (Tex. App.–Dallas 2000, pet. denied) ("Parties who reasonably foresee that their defamatory statements will be repeated to third parties may be held responsible for republications.")

The jury was given an instruction that is correct under the law. The jury is presumed to have

---

[16] (Clerk's Dkt. #110 at 3-10.)

[17] (Jury Charge at 5, Clerk's Dkt. #101.)

followed the instructions. *Foradori v. Harris*, 523 F.3d 477, 516 (5th Cir. 2008) (*citing United States v. Gallardo-Trapero*, 185 F.3d 307, 321 (5th Cir. 1999)). The jury concluded that Wyatt published a statement by forwarding the postings when it concluded that Wyatt defamed Plaintiff.

Wyatt admitted that she brought certain Craigslist postings to the attention of Hargrave. It is of no consequence that she was merely sending along the statements of others. Rsmnt. 2d of Torts § 578 cmnt b. ("It is no defense that the second publisher names the author or original publisher of the libel.") For example, under the common law, if a defamatory story appears in a newspaper and a second newspaper republishes the article accompanied by a statement that it was copied from the first newspaper, the second newspaper is liable for reprinting the article. *Id.* § 578 illustration 2.[18] Even if Wyatt had forwarded the statement accompanied by a note that she did not believe the statement was true, she is still liable as for republishing it. *Id.* § 578 cmnt e. The Restatement also provides that " . . . one who only delivers or transmits defamatory matter published by a third person is subject to liability if, but only if, he knows or has reason to know of its defamatory character." Rsmnt. 2d of Torts § 581. Here, Wyatt does not argue that she did not know the contents of the message. To the contrary, she was asked by Hargrave to pass along messages regarding Plaintiff and Wyatt forwarded such messages along.

The Court concludes that the jury's conclusion that Wyatt published a statement is supported by sufficient evidence and, consequently, Wyatt's motion for judgment as a matter of law on this ground is denied.

### 3. Wyatt's Actions Led to Plaintiff's Damages

Wyatt also contends that there was no evidence that the posting affected Hargrave in any way. Hargrave did not testify, so Wyatt relies primarily on the affidavit of Hargrave which was submitted along with a motion for summary judgment. In the affidavit, Hargrave stated that her

---

[18] Note that Texas has modified the common law by granting certain privileges to newspapers and periodicals. TEX. CIV. PRAC. & REM. CODE § 73.002. The fact that this statutory protection is necessary implies that those who republish statements are liable under the common law.

"decision to terminate [her] working relationship with [Plaintiff] was not effected by any conversation or communication with Terrie Wyatt."[19] The Court acknowledged that, at the summary judgment stage, "the uncontroverted evidence before the Court demonstrates that Hargrave did not end her business dealings with the [Plaintiff] due to any conduct of Wyatt."[20] However, at the trial, the jury heard evidence in addition to Hargrave's affidavit such as Wyatt's admission that she emailed with Hargrave and talked with Hargrave by phone. The jury was free to disbelieve Hargrave's affidavit and, instead, infer that Wyatt's forwarded postings led Hargrave to terminate her relationship with Plaintiff. This is the type of evidentiary weighing which is the province of the jury, not the Court.

The Court concludes that the jury had sufficient evidence to conclude that Wyatt's actions led to Plaintiff's damages and, consequently, Wyatt's motion for judgment as a matter of law on this ground is denied..

### 4. Damages were Not Speculative

Wyatt also contends that the jury's damage award was speculative and unsupported by sufficient evidence. This argument, which was made in a total of four sentences, was not reurged in Wyatt's reply. Therefore, Wyatt did not respond to Plaintiff's explanation that the jury concluded that $187,500 was the proper amount of damages for future income because (1) Jeff Edwards testified that the future income would range somewhere between $100,000 and $1,000,000 and (2) Wyatt herself estimated that her work on the videos was worth $150,000. The jury's verdict was within the low range of Jeff Edwards' testimony. It is the role of the jury to weigh the evidence, draw inferences, and determine the amount of lost profits. *See, e.g., Miss. Chem. Corp. v. Dresser-Rand*, 287 F.3d 359, 372-73 (5th Cir. 2002).

The Court concludes that the jury's award of damages was supported by sufficient evidence and, consequently, Wyatt's motion for judgment as a matter of law on this ground is denied.

---

[19] (Order at 11, Clerk's #73, quoting Hargrave's affidavit.)

[20] (*Id.*)

### 5. Statutory Defense was Waived

For the first time in the case, Wyatt argues in her reply to Plaintiff's response to Wyatt's motion for judgment as a matter of law that she is immune from liability by 47 U.S.C. § 230(c).[21] Plaintiff brings a separate motion to strike this defense as untimely. Arguments raised for the first time in a reply brief are waived. *Southern Co. v. Dauben, Inc.*, No. 08-10248, 2009 U.S. App. LEXIS 7993 at *12-13 n. 4 (5th Cir. April 15, 2009). Therefore, this argument is waived.

However, even if this defense had been raised in the motion for judgment as a matter of law, it would have still be waived. 47 U.S.C. § 230(c) states that a user of an interactive computer service shall not be treated as the publisher or speaker of information provided by other information content providers. 47 U.S.C. § 230(c)(1). Further, users of computer services are not to be held liable for certain other actions. *Id.* § 230(c)(2). Some courts have applied this provision to limit defamation claims. *See, e.g., Barrett v. Rosenthal*, 146 P.3d 510, 526 (Cal. 2006) ("The great variety of Internet publications, and the different levels of content control that may be exercised by service providers and users, do not undermine the conclusion that Congress intended to create a blanket immunity from tort liability for online republication of third party content. Requiring providers, users, and courts to account for the nuances of common law defamation, and all the various ways they might play out in the Internet environment, is a herculean assignment that we are reluctant to impose.")

This statute is an affirmative defense to liability. *Novak v. Overture Servs.*, 309 F. Supp. 2d 446, 452 (E.D.N.Y. 2004); *Doctor's Assocs v. QIP Holders, LLC*, 82 U.S.P.Q.2d (BNA) 1603 (D. Conn. 2007). Statutory affirmative defenses may not be raised for the first time in a motion for judgment as a matter of law. *Oden v. Oktibbeha County*, 246 F.3d 458, 467(5th Cir. 2001); *Reasoner v. Hous. Auth. of the City of Teague*, 286 Fed. Appx. 878, 881 (5th Cir. 2008). Consequently, by raising this defense for the first time in a motion for judgment as a matter of law,

---

[21] (Clerk's Dkt. #114 at 3-4.)

the Court concludes that Wyatt waived this as an affirmative defense.

Accordingly, Plaintiff's motion to strike this defense is granted and Wyatt's motion for judgment as a matter of law on this ground is denied.

## V. CONCLUSION

In accordance with the statements above, Defendant/Counter-Plaintiff's Renewed Motion for Judgment as a Matter of Law, filed June 2, 2009 (Clerk's Dkt. #110) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff/Counter-Defendant's Motion to Strike Defendant/Counter-Plaintiff's Reply, filed July 1, 2009 (Clerk's Dkt. #115) is **GRANTED**.

An order entering final judgment will follow.

SIGNED this 6th day of July, 2009.

_____
ROBERT PITMAN
UNITED STATES MAGISTRATE JUDGE
Presiding under 28 U.S.C. § 636(c)