IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| KEM EDWARDS D/B/A INTERSKIL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CAUSE NO. A-07-CA-1008 RP |
| | § | |
| TERRIE WYATT, INDIVIDUALLY | § | |
| AND D/B/A ATWDESIGN, | § | |
| | § | |
| Defendant/Counter-Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| JEFF EDWARDS, INDIVIDUALLY | § | |
| AND D/B/A BODYCUE, BODYQ, | § | |
| JUDGE THE WAITER, | § | |
| JUDGE THE SERVICE AND BIZOPS; | § | |
| KEM EDWARDS, INDIVIDUALLY | § | |
| AND D/B/A INTERSKIL, | § | |
| | § | |
| Counter-Defendants. | § | |

**DEFENDANT'S SECOND MOTION FOR RELIEF
FROM A JUDGMENT OR ORDER AND REQUEST FOR AN ORAL HEARING**

TO THE HONORABLE ROBERT PITMAN, UNITED STATES MAGISTRATE
JUDGE:

COMES NOW Defendant/Counter-Plaintiff Terrie Wyatt and pursuant to Rule 60(b)(1) of the Federal Rules of Civil Procedure and Local Rule CV-7(g) files this her Second Motion for Relief from a Judgment or Order and Request for an Oral Hearing requesting that the court grant relief from its erroneous denial of Wyatt's Renewed Motion for Judgment as a Matter of Law and would respectfully show the Court as follows:

## I.    <u>BACKGROUND</u>

The instant matter came to trial by jury on May 18, 2009. On May 21, 2009 the jury rendered its verdict in favor of Plaintiff on a single instance of defamation – That Ms. Wyatt had forwarded an unspecified Craig's List posting to Jan Hargrave on or about September 5, 2007. *Clerk's Dkt. # 108.* After verdict was reached, on June 2, 2009, Ms. Wyatt renewed her motion for judgment as a matter of law. *Clerk's Dkt. # 110.* On July 6, 2009, the Court entered an Order denying Ms. Wyatt's motion. *Clerk's Dkt. # 116.* On August 5, 2009 Ms. Wyatt filed a Notice of Appeal to the 5th Circuit Court of Appeals. *Clerk's Dkt. # 120.* On August 6, 2009, Ms. Wyatt filed a motion for relief from a judgment or order pursuant to Rule 60(b) of the Federal Rules of Civil Procedure. *Clerk's Dkt. #119.*[1] On August 20, 2009, the Court entered an Order denying Ms. Wyatt's Rule 60(b) motion for a procedural error and without reaching the merits of the motion. *Clerk's Dkt. # 124.* Having cured the purported procedural error, Ms. Wyatt now presents this meritorious second motion for relief from a judgment and order in this matter, pursuant to Rule 60(b)(1) of the Federal Rules of Civil Procedure and in the interests of justice.

## II.    <u>LEGAL STANDARD OF FEDERAL RULE OF CIVIL PROCEDURE 60(b)(1)</u>

Rule 60(b)(1) of the Federal Rule of Civil Procedure allows the court to grant relief from a final judgment or order based upon "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). A Rule 60(b) motion is used "to rectify an obvious error of law, apparent on the record." *Benson v. St. Joseph Regional Health*

---

[1] Although Ms. Wyatt's motion was recorded as filed on August 6, 2009, the record shows that the motion was uploaded to the ECF beginning at 11:55pm on August 5, 2009 and ending at 12:05am on August 6, 2009.

*Center*, 575 F.3d 542, 547 (5th Cir. July 10, 2009) (quoting *Hill v. McDermott, Inc.,* 827 F.2d 1040, 1043 (5th Cir. 1987).

When the court addresses the merits of the instant motion, it will recognize obvious errors of settled Texas law which leave the correction free from doubt. *See id.* at 548 *(citing Alvestad v. Monsanto*, 671 F.2d 908, 913 (5th Cir. 1982).  The obvious legal errors of the Court, identified below, can still be corrected before everyone suffers the time and expense of an appeal.

## III.    TIMELINESS OF THE CURRENT MOTION

A Rule 60(b) motion can be filed up to one year after the final order in a case. Fed. R. Civ. P. 60(c)(1).  The Fifth Circuit's general rule that a Rule 60(b) motion to correct an obvious error of law should be filed within the time for taking an appeal, is arguably intended to prevent a party from seeking review after the appeal period, on the ground that the error did not come to the parties attention sooner. *Benson*, 575 F.3d at 547 (citing *Hill,* 827 F.2d at 1043).  All of the errors noted in this motion were recognized and argued, either in Wyatt's Rule 50 motion or in her original Rule 60(b) motion, filed prior to the expiration of the period to appeal. *See Clerk's Dkt. #s 110 and 119.*  Wyatt has filed a timely notice of appeal. *Clerk's Dkt. # 120.*

This court denied the original Rule 60(b) motion on procedural grounds without addressing the merits of her argument. *Clerk's Dkt. # 124.*  As explained below, Wyatt contends the Court erred in denying her original Rule 60(b) motion.  Accordingly, although the timing of this motion is unusual, there is no reason that the Court should refuse to entertain it.

Once the Notice of Appeal has been filed, the trial court no longer has jurisdiction to grant a Rule 60(b) motion, but it still may consider the merits of the motion. *Shepherd v. International Paper Co.*, 372 F.3d 326, 329 (5th Cir. 2004). After review, should the Court be inclined to grant the Rule 60(b) motion, Wyatt would simply need to make a motion in the Court of Appeals for remand of the case to the trial court. *Id.* The Fifth Circuit routinely grants such a motion in order to resolve the case and lighten its crowded docket.

Wyatt contends the events of this case present just the kind of situation contemplated by the Fifth Circuit's policy regarding motions filed under 60(b)(1) – "to avoid wasting appellate resources on the perfunctory correction of 'obvious errors of law'". *See Benson*, 575 F.3d at 547 (*citing Alvestad*, 671 F.2d at 913). Although this second effort is filed after the notice of appeal, there is still time for the Court to review its own prior decisions and spare everyone the necessity of an appeal.

## IV.    THE COURT ERRED IN DENYING THE FIRST RULE 60(b) MOTION

The Court correctly ascertained that Wyatt's original motion was pursuant to Rule 60(b)(1), which permits a court to "relieve a party from a final judgment, order or other proceeding for mistake, inadvertence, surprise, or excusable neglect." However, the Court denied the motion, stating that Wyatt, "points to no error made by the Court." *Clerk's Dkt. 124, p. 4.* Wyatt submits that this finding was error. Although her original motion did not label the errors with the same clarity as they have been set forth below, and did not contain the words, "the Court made an obvious error of law", Wyatt's original Rule 60(b) motion did assert such errors by including all of the facts and law **necessary** for the Court to recognize, as well as determine, that it had in fact made

several obvious errors of law.  The original motion alerted the Court to these errors several ways, including, but not limited to, the following:

**A**.    "In this case, Plaintiff has failed to meet **even a single element of her claim**.  The evidence presented by Plaintiff is legally insufficient to support the jury's verdict and **was allowed to proceed to jury and not rendered as a matter of law by a misunderstanding of defamation law applicable in this matter."**  *Clerk's Dkt. 119, p. 3*, emphasis added.

**B**.    "**This Court acknowledged in its July 6, 2009 Opinion that the substance of defamatory statements cannot be proven through circumstantial evidence".**  *Clerk's Dkt. 119, p. 9,* emphasis added.

**C.**    "Accordingly, without proof of the statements falsity, and in fact with the uncontested evidence of truth to the statements contentions that people had not been paid for their services, **the Court should not have allowed the claim to proceed to the jury and should have rendered a judgment denying Plaintiff's defamation claim as a matter of law**."  *Clerk's Dkt. 119, p. 18-19, e*mphasis added*.*

**D.**    The section entitled The Damage Award Was Based On Speculative Damages **Which Are Not Permitted Under Texas Law**, concluded with, "Accordingly, without proof of damage to Interskil or the Edwards, the Jury's finding of liability is legally insufficient and **the Court should not have allowed the claim to proceed to the jury and should have rendered a judgment denying Plaintiff's defamation claim as a matter of law."**  *Clerk's Dkt. 119, p. 8*, emphasis added.

The statements above read in the context of the original Rule 60(b) motion, point to obvious errors of law made by the Court in allowing the claim to proceed to the jury and later denying the renewed motion for judgment as a matter of law.

**V.    The Court obviously erred by denying Wyatt's motion for judgment as a matter of law at the close of Plaintiff's case, where Plaintiff completely failed to prove any element of her claim.**

A claim of defamation under Texas law requires evidence that the defendant: (1) published a statement of fact concerning the plaintiff; (2) that was defamatory; (3) the statement was false; (4) the defendant acted negligently in publishing the false and defamatory statement; and (5) the plaintiff suffered damages as a result. *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex.1998); *El-Khoury v. Kheir*, 241 S.W.3d 82, 85 (Tex. App. – Houston [1st Dist.] 2007, *pet. denied*); *Brown v. Swett & Crawford of Tex.*, 178 S.W.3d 373, 382 (Tex. App. – Houston [1st Dist.] 2005, *no pet.*). Moreover, "[d]efamation claims must specifically state the time and place of the publication." *Jackson v. Dallas Indep. Sch. Dist.*, No. CIV. A. 398-CV-1079, 1998 WL 386158, at *5 (N.D. Tex. 1998), *aff'd*, 232 F.3d 210 (5th Cir. 2000).

This motion will address several of the most glaring fatal deficiencies in Plaintiff's defamation claim. These deficiencies were obvious at the close of Plaintiff's case and Wyatt was entitled to judgment as a matter of law at that point. The Court erred by allowing the matter to proceed to the jury. The same deficiencies were raised in Wyatt's post-trial renewed motion for judgment as a matter of law, which was also denied in error. The written post-trial motion was more extensive than the motion at trial, therefore the arguments in support of Wyatt's position are best made in the following section.

**VI.** **When deciding Wyatt's post-trial renewed motion for judgment as a matter of law. the Court made a material fact error and several errors of law, which in turn led to an erroneous denial of the motion.**

**A.** **Wyatt was denied due process.**

From September 1, 2007 through September 18, 2007, at least thirteen unique posts about Interskil and/or Plaintiff's husband were placed in the help wanted section of Craigslist. *See generally Trial Exhibit D-22* (containing 13 postings on Craigslist, the substance of which is organized and attached for the Court's convenience as Exhibits 1-13 to this motion.) Wyatt admits she republished one or more post/s by sending them to Jan Hargrave, based solely on being open to the possibility resulting from her effort made to honor Hargrave's request, however Wyatt does not recall which post/s she may have republished. Prior to and during trial, Edwards never alleged, much less proved, specifically which post/s Wyatt republished. Settled Texas law requires that allegedly defamatory statements must be identified with particularity in order to allow Wyatt to raise an adequate defense. *See Clerk's Dkt. 116, p. 7.* Due process requires that a defendant have clear notice of the allegations against her. In this case, Wyatt did not have such notice, therefore she was hindered in her ability to defend herself.

If due process requires fair notice of allegations, it surely follows that a defendant is entitled to clear notice of the basis for a jury's finding of liability. In this case, Wyatt never knew exactly what statements she was accused of making about Edwards and now, she does not know what statements the jury found she did make about Edwards. She is unable to review the jury's findings for error and is therefore prejudiced in her ability to assert her rights on appeal. Wyatt has been denied due process twice.

**B.** **The court erred by finding that there were only four craigslist posts at issue or in evidence.**

Throughout the Court's July 6, 2009 memorandum denying Wyatt's renewed motion for judgment as a matter of law, the Court inexplicably states that there were only four Craigslist posts at issue. *See, e.g. Clerk's Dkt. 116, p. 4-5.* Postings #1-4 are referred to throughout the memorandum to support the Court's review of the verdict.

In fact there were thirteen posts in evidence at trial. Ms. Wyatt does not recall specifically which, if any, post/s she republished and Ms. Edwards did not produce any evidence to narrow the inquiry. Thus, there were thirteen posts in evidence, but no particular post was ever placed at issue.

**C.     The Court erred by denying Wyatt's renewed motion as a matter of law where the Court is unable to identify with certainty, the specific defamatory statements that led to the jury's finding against Wyatt.**

It appears from the Court's memorandum in response to Wyatt's renewed motion for judgment as a matter of law that the Court is uncertain as to the basis for the jury's finding against Wyatt. The memorandum generally refers to the content of Postings #1-4, specifically notes the use of the words crooks and scammers, and generally concludes that the Jury determined that Wyatt republished all four of these posts and that the content of the posts was defamatory.

Wyatt submits that review of a defamation claim requires a much more specific identification of the defamatory statement which supports the claim and that upon such identification each statement should be examined against each element of the claim. In this case, such review is impossible, because the jury did not identify the basis of its finding.

For example, whether something is a statement of fact or opinion is a question of law for the court. The First Amendment to the United States Constitution and article 1,

section 8 of the Texas Constitution require a plaintiff to establish that the defendant published a false, defamatory statement of fact, rather than an opinion, as an essential element of a cause of action for libel. *A.H. Belo Corp. v. Rayzor*, 644 S.W.2d 71, 79 (Tex. App.-Fort Worth 1982, writ ref'd n.r.e.); *see Carr v. Brasher*, 776 S.W.2d 567, 570 (Tex. 1989). In other words, the plaintiff must prove that the statements contained false, defamatory facts rather than opinions or characterizations. *A.H. Belo Corp.,* 644 S.W.2d at 80. Whether a statement is an opinion or an assertion of fact is a question of law for the court to determine. *See Vice v. Kasprzak*, 2009 WL 3152122, * 12 (Tex.App.-Hous. [1[st] Dist.] Oct 1, 2009) (citing *Bentley v. Bunton*, 94 S.W.3d 561, 580 (Tex. 2002) and *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 114 (Tex.2000)).    Here, the Court cannot make the necessary determination because it does not know which statement to examine. The trial simply did not result in findings sufficient to support a judgment against Wyatt.

The mere use of certain words does not constitute as a defamatory statement of fact. *See Vice*, 2009 WL at * 12 ("Expressions of opinion may be derogatory and disparaging but nevertheless be protected by the First Amendment of the United States Constitution and by article I, section 8 of the Texas Constitution.")(citing *Falk & Mayfield L.L.P. v. Molzan*, , 974 S.W.2d 821, 824 (Tex.App.- Hous. [14[th] Dist.] 1998, pet. denied)). In order to uphold the verdict the court needs to find as a matter of law that there was a defamatory statement of fact. *Id.* The court erred when it ruled on the Rule 50 motion without stating as a matter of law what the particular statement of fact was that supported the jury's verdict.

Accordingly, under well-settled Texas law, Plaintiff's claim fails as a matter of law. *See, e.g. Clerk's Dkt. 116, p. 7.* (Citing a long line of cases and settled law requiring

that allegedly defamatory statements be identified with specificity and particularity, and if not, the defamation claim must fail as a matter of law).

**D.    The Court obviously erred by refusing to grant Wyatt judgment as a matter of law where Plaintiff was unable to produce a scintilla of evidence to identify a post forwarded by Wyatt.**

In its July 6, 2009 opinion the Court stated, "It is not proper for this Court to replace the reasonable inferences drawn by the jury with its own judgment." *Clerk's Dkt. 116, p. 8.* Wyatt did not ask the Court to replace the Jury's inferences. She asked the Court to recognize that the jury had *no evidence* before it to aide them in determining which post(s) she forwarded. A defamation verdict requires identification of the publication the award is based upon. The verdict in this case suggests that if a party admits to publishing one or more of thirteen writings, the jury is free to assume she published the worst of them. Such arbitrary assignment of liability is clearly unconstitutional.

Plaintiff sued Wyatt for four separate instances of defamation related to the posts.[2] Thus, the thirteen posts were admitted at trial for numerous reasons. The jury was given no reason to assume any particular post was admitted as specific evidence of any one claim.

In fact, of the thirteen posts, two were written by "Interskil" and certainly could not support Plaintiff's defamation claim. *See Exhibits 6 and 11, attached hereto.* The remaining eleven posts each contained disparaging words or remarks about Interskil, however the content of each post was unique. Whether any one post met the elements of a defamation claim would involve a fact intensive analysis by both the Court and the jury,

---

[2] The jury found against Plaintiff on all, except her claim that Wyatt republished post(s) to Jan Hargrave.

of that unique content.  *See Vice*, 2009 WL at * 12 (citing *Bentley*, 94 S.W.3d at 580 and *Turner*, 38 S.W.3d at 114).

The jury heard Wyatt's testimony that she sent Craigslist posts which referred to Interskil or Jeff Edwards, to Jan Hargrave at Hargrave's request.  Wyatt explained that Hargrave, "said she already received some and wanted to know if I knew of any more, and if I did, please let her know."  *Clerk's Dkt. 116, p. 5* (citing Trial Transcript at 36:17-24).  Wyatt never denied Hargrave's knowledge of the postings, in fact, her testimony was that Hargrave's prior knowledge of the postings motivated her to make the request of Wyatt.

Amongst other issues overlooked in evidence, however, it was never alleged or admitted that Wyatt may have forwarded **all** the postings.  Wyatt could not and does not recall which posts, if any, were forwarded by her to Hargrave, or were previously received from others by Hargrave.  Therefore Wyatt was unable to testify to the number of post(s) she sent, which of the post(s) she sent, the date/s she sent them, or if such post(s) were a duplicate to those obtained prior by Hargrave.  Although the jury was allowed to disregard or disbelieve Hargrave's affidavit stating her decision had nothing to do with Wyatt, after having heard Plaintiff read and acknowledge it at trial, Plaintiff never plead or *alleged* which of the post/s Wyatt forwarded and Hargrave did not testify and has never made any statement to indicate she received a forwarded Craigslist post from Wyatt.[3]

---

[3] This fact alone means that Plaintiff did not meet her burden of proof as to publication.  Publication takes place when the alleged statement of defamatory fact is "communicated" to a third party.  Writing a letter or email does not communicate anything.  The content of a writing is communicated, when a third party reads and understands it. Restatement2, V.III, §563.

At the close of Plaintiff's case, the jury had not been presented with even a scintilla of evidence to support a determination of which post(s) Wyatt forwarded to Hargrave. The Court erred by allowing the matter to proceed to the jury because Plaintiff had failed to meet her burden of proof to establish the content of Wyatt's republication(s).

In her response to Wyatt's renewed motion for judgment as a matter of law, Plaintiff implies she did prove the substance of Wyatt's republications. *Clerk's Dkt. #* 112, p. 9-10. Plaintiff erroneously insists there were only four posts in evidence at trial and that the jury was free to assume Wyatt forwarded all four. *Id.*[4]

Plaintiff relies on the timing of the four posts at issue as proof that they must have been the posts Wyatt republished, because Hargrave terminated her contract on September 7, 2007. *Id.* A cursory examination of the timing of the posts shows a glaring inconsistency in this logic. There were nine posts published prior to the end of the day on September 5, 2007. Plaintiff claims Wyatt's alleged republication had to include one or more of four posts and ignores five other possibilities. *Id.*

In fact, Trial Exhibit D-22 included a total of 13 Craigslist posts, listed here in chronological order, with titles copied exactly as written on each post, and with the posts from P-11 through P-14 in bold:

1. 9-01-07 2:51pm Corporate Video Scams (Interskil and BodyQs)
2. 9-02-07 8:29pm Interskil Corporate Scam
3. **9-03-07 11:29am Over 20 written testimonials**
4. **9-04-07 12:28 am Austin Artists-Rights Group**
5. **9-04-07 11:08am Collections Agency for filmmakers, actors, writers, and sales people**
6. 9-04-07 7:39pm Smear Campaign Against Interskil (this post was written by Interskil)

---

[4] Although there were thirteen posts in evidence, without explanation the Court found that only four posts were at issue and labeled them Postings #1-4. *Clerk's Dkt. # 116, p. 5.*

7.  9-04-07 11:51pm RE: Smear Campaign Against Interskil

8.  9-05-07 12:49pm RE: Future Film, etc.

**9.  9-05-07 10:52pm Interskil Postings**

10. 9-06-07 9:57pm Appoloy [sic] to Interskil

11. 9-11-07 2:20pm People Who Hide Behind The Shadows (this post was written by Interskil)

12. 9-15-07 1:13am Operating near our city

13. 9-18-07 12:00am actors and film makers

Along with six other citations which stressed the requirement that a defamatory statement be identified with particularity, in its July 6, 2009 Opinion, the Court acknowledged that the substance of defamatory statements cannot be proven through circumstantial evidence. *See Clerk's Dkt. # 116*, p.8 (citing *Elkins v. Capital One Bank*, no. 05-06-01539-CV, 2008 Tex. App. LEXIS 605 at *10-11 (Tex. App. – Dallas 2008, pet. Denied). However, despite the Court's acknowledgment that Texas law does not allow the substance of the statement to be proven circumstantially or through inference, it also concluded that, "To reach its verdict, the jury must have inferred that the postings in evidence were those forwarded by Wyatt to Hargrave." *Id. at* p.7.

The Court went on to find that, "The jury reviewed the evidence as a whole and drew a logical conclusion: The postings Wyatt admitted to forwarding were those admitted into evidence, a fact Wyatt never denied."[5] *Id..* The Court does not identify any evidence, circumstantial or otherwise, that specifically links Wyatt to the republication of any particular post. There was no such evidence.

Whatever Wyatt may have forwarded to Hargrave probably was in evidence, but there is no way to identify it from a group of thirteen posts. The Court has assumed that

---

[5] Plaintiff never plead nor *alleged* which of the post(s) Wyatt forwarded, therefore there was no occasion for Wyatt to deny forwarding any specific post. Her admittance was based solely on being open to the *possibility* of having forwarded "something" due to an effort she made for honoring Hargrave's request. Wyatt does not know which, if any, "post(s)" she forwarded, so with that said, she cannot confirm nor deny any specifics.

the jury assumed, both the number and the substance of the posts forwarded by Wyatt. *Id. at* p. 7-8.  The jury was not authorized to decide the facts in this case by making logical conclusions or reasonable inferences.  The jury's task was to determine the material facts of whether Wyatt forwarded a defamatory post.  The minimum standard of proof was preponderance of evidence.  Specifically the jury was instructed to consider the testimony of all witnesses and all exhibits received in evidence, and to apply that *proof* to each element of Plaintiff's claim.  *Jury Instructions, p. 2.*

The first specific instruction given to the jury required it to determine if Wyatt had published a statement of fact. *Jury Instruction, p. 5.*  In order to answer that question, the jury had to identify, as a matter of fact proven by a preponderance of the evidence, the content of a post that was published by Wyatt.  The jury did not have evidence before it to make such a determination.  There was no greater reason to believe that Wyatt forwarded Posting #s 1-4, than there was to believe Wyatt forwarded the two posts that were written by Interskil, or any one of the other seven posts.

Even if, as Plaintiff erroneously argued, only four posts had been in evidence, there was no evidence to support a factual finding that Wyatt forwarded all four or any one of those posts.   Further, just as Edwards failed to tell the jury which post to consider, the jury failed to tell the Court which post it **did** consider, making review of the decision impossible.

**E.     The Court did not identify the evidence that would support the jury's finding that Wyatt made a defamatory statement of fact.**

Defendant's Rule 50 motion argued that there was no competent evidence that Wyatt published a statement of fact. *Clerk's Dkt. # 110, p.3.*[6] In finding that the jury had sufficient evidence of a defamatory statement, the court's only identification of such evidence was simply acknowledgment that the words "scammers" and "crooks" were used. *See Clerk's Dkt. # 116, p. 7.*

Posts #s 2 - 4 include various references to "scammers" and "crooks". These words must be viewed in the context of the earlier posts that indicate the writer has no actual knowledge of wrongdoing on the part of Plaintiff. In addition, the 2005 Texas Court of Appeals decision in *Moore v. Waldrop* establishes that statements like those made here are non-defamatory because they merely involve terms of general disparagement rather than statements of defamatory *fact*. 166 S.W.3d at 383.

*Moore* dealt with the defamatory nature of the statement, "You don't want to hire him, he's a crook." *Id.* The court held that standing alone, the word "crook" was merely a term of general disparagement, and did not impute a specific crime. *Id.* at 384; see also *Billington v. Houston Fire & Cas. Ins. Co.*, 226 S.W.2d 494, 496 (Tex. Civ. App.--Fort Worth 1950, no writ) (holding that the use of the words "liar" and "crook" were non-defamatory because they were used only as opprobrious terms).

## F.    Plaintiff never proved the fact of her damages.

"Uncertainty as to the fact of legal damages is fatal to recovery, but uncertainty as to the amount will not defeat recovery."  McKnight v. Hill & Hill Exterminators, 689 S.W.2d 206, 207 (Tex.1985) (quoting Southwest Battery Corp. v. Owen, 131 Tex. 423, 115 S.W.2d 1097, 1099 (Tex.1938)).  Plaintiff bore the burden at trial to prove her

---

[6] The original rule 60 extensively argued that there are no statements of fact in postings 1-4. *Clerk's Dkt. 119, p. 15-17.*

damages were the proximate and foreseeable result of Wyatt's actions.  *See Stuart v. Bayless*, 964 S.W.2d 920 (Tex. 1998); *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 816 (Tex. 1997)(holding that defendant's failure to pay its bill resulting in a loss of contingency fee's that might have been earned from other clients was not foreseeable as a matter of law); *Fox v. Parker*, 98 S.W.3d 713, 726-27 (Tex.App.–Waco 2003, pet. denied).   The jury apparently recognized the benign nature of the posts, because it did not award Plaintiff anything for damage to reputation or for emotional harm.   Although the jury apparently believed that Wyatt caused Hargrave's departure, Plaintiff offered no proof at trial that Hargrave's departure resulted in lost income.

Jan Hargrave is a body language expert with whom Interskil produced instructional videotapes.  Prior to the termination of her contract with Interskil, Hargrave produced 37 video titles for Interskil to use in creating various videos.   During his testimony at trial, Jeff Edwards acknowledged after reading from a sworn affidavit of Hargrave, that she is a body language expert who "provided services as a subject matter expert and assisted the Edwards' and Interskil's business DVD productions **with material based on her studies and expertise** of body language.**"**   According to Jeff Edward's testimony, Interskil had authorization prior to Hargrave's termination request to continue to use Hargrave's footage as they had throughout a range of various titles of the business's DVD productions.  A total of 37 video titles are listed and referred to.  *See Trial Exhibit P-40.*  Hargrave's termination agreement explicitly grants Interskil the full rights to continue the use of any projects involving Hargrave.

> *"Both parties agree and understand that certain video projects created by Interskil, prior to this Agreement, were and are in progress.  Therefore, the parties have agreed that Interskil shall have the full right and option to*

> *continue to use any and all pictures, video images, video content or*
> *reference to Jan Hargrave as a subject matter expert for Interskil in the*
> *following video projects and/or video titles:"*
> *Id.*

According to Plaintiff, Interskil suffered economic damages when Wyatt's actions caused Jan Hargrave to terminate her contract with Interskil. However, the termination agreement shows that Interskil retained the full rights and ownership of all projects involving Ms. Hargrave that had been completed or started as of the date of the termination. *Id.* There is no evidence to indicate that Hargrave's departure changed any aspect of Interskil's business.

In Plaintiff's response to Wyatt's original Motion for Relief From a Judgment or Order, she stated, "the record evidence showed Interskil already had a distribution contract in place though employeeuniversity.com… While sales may not have been substantial, Interskil was in business and making some sales." *Clerk's Dkt. 123, p. 6.*

Wyatt acknowledges that the distribution contract was in place. But again, there is no evidence to indicate that Hargrave's departure disrupted the contract in any way. In fact, employeeuniversity.com, as well as other websites, continue to offer Interskil's Hargrave videos for sale today.[7]

Since Interskil is still free to market the products it produced with Hargrave and its only distribution contract is still in place, there is simply no evidence that Hargrave's departure caused Interskil any loss, therefore Plaintiff failed to prove the existence of any damages.

---

[7] *See Exhibit 17,* attached hereto, Examples of web pages accessed on October 2 and 3, 2009 from InterSkillMedia.Com, EmployeeUniversity.com, The Richardson Company (rctm.com), Media-Partners.com, and Enterprisemedia.com all currently selling the Hargrave's videos produced and owned by Plaintiff.

**G.     The Court obviously erred by finding that Plaintiff presented competent evidence of lost of income.**

No evidence of lost profits was presented by Plaintiff.   No evidence of actual sales nor any evidence of future sales of the Hargrave's videos was introduced at trial for the jury to rest its award calculation upon.   No evidence was introduced as to the current or projected video market or profit expectations based upon past performance or any other tested method  of economic analysis.   A plaintiff must introduce evidence by which the jury can value the current business and loss of future business.   *See University Computing,* 504 F.2d at 545.   Plaintiff has not met her burden in this respect.   Because Plaintiff has failed to meet her burden of presenting sufficient evidence demonstrating a triable issue of material fact as to actual damages recoverable and future damages attributable to her defamation claim, the Jury's award of damages for lost income should be stricken.

In her response to Wyatt's original motion for relief from judgment or order, Plaintiff suggests Wyatt's disagreement is with how the jury weighed the evidence and suggests that the matter is best left for appeal. *Clerk's Dkt. 123, p. 6.*   On the contrary, Wyatt's argument is that Plaintiff did not produce any competent evidence of damages caused by Wyatt as a matter of law.   The matter never should have gone to the jury because there was nothing for it to weigh.[8]

Nevertheless the matter did go to the jury and upon its assumption that Wyatt defamed Plaintiff to Hargrave, the jury awarded Plaintiff $1,000.00 for loss of income in the past and $187,500.00 for future lost income.   *Question Ten, Clerk's Dkt. # 108.*

---

[8] The jury was instructed not to award damages for speculative injuries.  It was also instructed that it could only award damages for "injuries that a party asserting a claim proves was proximately caused by an opposing party's wrongful conduct."  *Jury Instructions, p. 14.*

There is no support in the record to justify a dollar of this award and it is not necessary to ask the Court of Appeals to confirm that fact.

A jury may not arbitrarily assess an amount neither authorized nor supported by the evidence presented at trial. *See First State Bank v. Keilman,* 851 S.W.2d 914, 930 (Tex.App.-Austin 1993, writ denied). In other words, a jury may not "pull figures out of a hat;" a rational basis for the calculation must exist. *Id.,* 851S.W.2d at 930 (quoting *Neiman-Marcus Group, Inc. v. Dworkin,* 919 F.2d 368, 372 (5th Cir .1990)).

Lost profits can be recovered as damages as long as "[a]t a minimum, estimates of lost profits must be based upon ' objective facts, figures , or data from which the amount of lost profits can be ascertained.'". *Knox v. Taylor*, 992 S.W.2d 40, 61 (Tex. App.-Hous. [14th Dist.], 1999, no writ)(quoting *Holt Atherton Indu., Inc. v. Heine*, 835 S.W.2d 80, 84 (Tex. 1992)). The injured party must establish the amount of the loss by competent evidence with reasonable certainty. *See Texas Instruments, inc. v. Teletron Energy Management, Inc.*, 877 S.W.2d 276, 279 (Tex. 1994). What constitutes "reasonably certain" evidence of lost profits involves a fact intensive determination. *See Holt Atherton Indus., Inc.,* 835 S.W.2d at 84. Under Texas law, a claimant must show, with a reasonable degree of probability, (1) that it will incur future damages and (2) the amount of such damages. *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.,* 995 S.W.2d 647, 654-55 (Tex. 1999). If consequential damages are too remote, too uncertain, or purely conjectural, they cannot be recovered. *See Arthur Andersen & Co. v. Perry Equipment Corporation*, 945 S.W.2d 812, 816 (Tex. 1997).

Simply put, in order to establish lost income, a Plaintiff has to prove by competent evidence that income or the promise of income existed and that such income has been

reduced or lost as a result of the defendant's actions.  No such evidence or calculations were introduced at trial.

Jeff Edwards' testimony that before Hargrave's departure Interskil's future income would range somewhere between $100,000 and $1,000,000, was purely conjectural.  Wyatt's estimate of the value of the work she did on behalf of the Edwards, included projects that were unrelated to Interskil and the value of her services has no relation to the market valuation and possible lost profits that were to have been realized by the sale of Hargrave's videos.  The value of Wyatt's labor is no indicator that Interskil's projects were or would be successful or profitable.  But even if any of this information qualified as competent evidence of Interskil's financial potential, there was no evidence presented to show how or why Hargrave's departure would affect that potential.

In her Response to Wyatt's Renewed Motion for Judgment as a Matter of Law, Edwards states that the evidence adduced at trial in support of her lost income past and future, was Jeff Edwards' baseless conjectural testimony regarding future income, and two exhibits, D-4 and P-24.  *Clerk's Dkt. # 112, p. 18.*

Trial Exhibits D-4 and P-24 are copies of e-mail communications between the parties during negotiations about the value of Wyatt's work.  They contain no objective calculation or figures regarding either the value of the business or objective calculations of future income based upon any reliable sales figures or business data.  Neither D-4 nor P-24 reach the level of providing any competent evidence in support of the Jury's calculation of damages.

None of the testimony or documentation provided by Plaintiff qualifies as competent evidence of lost income. It was error for the Court to deny Wyatt's renewed motion for judgment as a matter of law, where there was clearly insufficient evidence of any damages at all.

**H.     The Court obviously erred in its application of the law to Plaintiff's purported evidence of lost income.**

In its July 6, 2009 Opinion, the Court apparently adopted one of Plaintiff's arguments in support of the Jury's damage award. The argument in question consisted of Plaintiff's misapplication of the law to the facts of this case. In her response to Wyatt's Renewed Motion for Judgment as a Matter of Law, Plaintiff cited the following in support of the jury's damage award:

In *Knox v. Taylor*, 992 S.W.2d 40 (Tex. App 14th, 1999, no writ), the Texas appeals court, among other things, held in a libel/tortious interference case involving lost profits, that "a jury, however, has the discretion to award damages within the range of evidence presented at trial." Id. at 62 (with evidence of an upper end range of from $9,300,000 and $11,500,000 and evidence of a lower end range of from $895,791 to $192,957 for lost profits, appeals court found jury award of $2,700,000 for lost profits as "clearly within the parameters established by appellants and appellees").
*Clerk's Dkt. 112, p. 18.*

Plaintiff went on to state that, "The jury was well within in the bounds of reasonableness to select a number at the lower end of the Edwards' scale in determining lost future income." *Id.* However, Plaintiff overlooked the key words in the excerpt from

*Knox,* which affirmed the jury's award because it was, "within the parameters **established by appellants and appellees**".   In Knox, the jury was faced with competent evidence from both of the parties' damages experts.  As seen above the estimates were grossly disparate and the *Knox* court found it appropriate for the jury to award an amount that was within the range established by those competing expert economic estimates.

In contrast, there was no competent evidence of damages established by anyone in this case.  Even if Jeff Edwards' testimony had qualified as such, *Knox* does not suggest a jury is free to award any amount that falls within a range established only by the Plaintiff. Rather, Texas law is clear that it is the role of the jury to weigh the evidence, draw inferences, and determine the amount of lost profits. *See, e.g., Miss. Chem. Corp. v. Dresser-Rand*, 287 F.3d 359, 372-73 (5th Cir. 2002).  In this case, however, there was no credible evidence beyond mere speculation that the plaintiff lost income or profits, either past or future.  As stated by the Texas Supreme Court, "**[p]rofits which are largely speculative**, as from an activity dependant on uncertain or changing market conditions, or on chancy business opportunities, or on promotion of untested products or entry into unknown and unviable markets, or on the success of a new and unproven enterprise, **cannot be recovered**.  Factors like these and others which make a business venture risky in prospect preclude recovery of lost profits in retrospect."  *Knox v. Taylor*, 992 S.W.2d 40, 61 (Tex. ApPlaintiff14th, 1999, no writ)(emphasis added)(quoting *Holt Atherton Indu., Inc. v. Heine*, 835 S.W.2d 80, 84 (Tex. 1992)).  Any possible future profits of Interskil are completely speculative and based upon the unknown future success of a new and unproven enterprise - Interskil.

Accordingly, without proof of damage to Interskil or the Edwards, the Jury's

finding of liability is legally insufficient and the Court should not have allowed the claim to proceed to the jury and should have rendered a judgment denying Plaintiff's defamation claim as a matter of law.  In the alternative, remittitur is appropriate and a downward adjustment of the award of past and future lost profits to zero dollars is justified.

## VII.    CONCLUSION

Based on the foregoing, Ms. Wyatt respectfully requests that her Second Motion for Relief from a Judgment or Order pursuant to Rule 60(b)(1)  be granted and that the Court direct an entry of judgment holding that, as a matter of law, Ms. Edwards did not prove that Ms. Wyatt defamed her or Interskil by forwarding an unidentified Craigslist posting to Ms. Hargrave, nor did Ms. Edwards prove she sustained any damages from the actions of Ms. Wyatt.  Ms. Wyatt further requests all other relief to which she may justly be entitled.

Respectfully submitted,

Law Office of Russell M. Soloway, P.C.
Post Office Box 301563
Austin , Texas 78703
Telephone: 210.859.5272
Facsimile: 210.579.7279
Russell@SolowayLaw.com

By:  .  /s/  Russell Soloway     .
     Russell M. Soloway
     State Bar No. 24008061

     Attorney For Defendant/Counter-
     Plaintiff Terrie Wyatt, Individually
     And D/B/A aTWdesign

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing instrument was delivered to counsel of record, Rick Guzman, Law Office of Rick Guzman in accordance with the Federal Rules of Civil Procedure via the CM/ECF system upon the filing hereof on this 7th day of October, 2009.

.  /s/  Russell Soloway     .
Russell M. Soloway